## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QULENA HALIM, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EAGLE GROUP INTERNATIONAL, LLC | : | 08-4312 |
| MANAGEMENT AND TRAINING | : | |
| CORP, CELESTE MCDONALD, and | : | |
| DARRYL JOHNSON | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

BUCKWALTER, S.J.                                                    December 23, 2008

Currently pending before the Court is the Motion of Defendant Eagle Group

International, LLC to Dismiss for Lack of Jurisdiction and Improper Service of Process.  For the

following reasons, the Court grants the Motion in part and transfers the case to the United States

District Court for the District of Columbia.

## I.      FACTUAL BACKGROUND

The Job Corps program is an educational and job-training program for at-risk youth run

by the United States Department of Labor.  (Def. Eagle's Mot. to Dismiss, Ex. 2.)  It has 122 Job

Corps centers located within fifty states, the District of Columbia, and Puerto Rico.  Id.  As part

of the program, Job Corps contains an educational component helping students obtain high

school diplomas or their equivalent.  (Id., Ex. 1, Aff. of Jim McDermott ("McDermott Aff.") ¶¶

15-16.)

Moving Defendant, Eagle Group International, Inc., is a Georgia corporation formed in 1995, which, in November 2005, changed its corporate structure to become Eagle Group International, LLC ("Eagle").  (Id.  ¶¶ 4-5.)   Eagle is a government contractor that handles logistics, consulting, and management services primarily for the federal government.  (Id. ¶ 11.)  In March 2004, Eagle began a contract with the United States Department of Labor to run the Potomac Job Corps Center in Southwest Washington, DC.  (Id. ¶¶ 7.)  The educational component of the Potomac Job Corps Center was the Potomac Academy, which was handled by Eagle's subcontractor, Defendant Management & Training Corporation ("MTC").  (Id. ¶¶ 15-16.)  Defendant Darryl Johnson, the former principal of the Academy, was an employee of MTC.  (Id. ¶ 17.)

Plaintiff Qulena Halim is a resident of Philadelphia.  (Am. Compl. ¶ 1.)  She attended the Potomac Academy in an effort to obtain her high school degree.  (Id.)  On January 23, 2004, Plaintiff was awarded a diploma by the Potomac Academy.  (Id.)  Shortly thereafter, she applied for a job at Jefferson Hospital in Philadelphia, which required a high school education.  The Hospital, however, informed her that her diploma was a "sham" and "invalid," and thus denied her the position.  (Id.)  When Plaintiff called the Potomac Academy to inquire why her diploma was considered a sham, she learned that the past principal, Defendant Darryl Johnson, and past director, Celeste McDonald, had been dismissed for "falsification of records."  (Id. ¶¶ 1, 7-8.)  She also learned that some of the high school diplomas issued by the Academy were given under "fraudulent circumstances."  (Id. ¶ 1.)  At no point did the Potomac Academy contact Plaintiff to inform her either that her diploma was invalid or that the principal and director had been fired.  (Id. ¶ 3.)

2

In May of 2008, Eagle was purchased by another company.  (McDermott Aff. ¶ 6.) Because the sale of Eagle did not include any of the assets or liabilities associated with the existing Job Corps contract, a new company, ATEG, was created, in April 2008, to handle matters involving that contract.  (Id. ¶¶ 8-9.)

On September 8, 2008, Plaintiff initiated the current litigation and, on November 5, 2008, she filed an Amended Complaint.  The Amended Complaint brings claims against Eagle, MTC, Darryl Johnson, and Celeste McDonald for fraud (Count I) and negligence (Count II).  (Am. Compl. ¶¶ 1-3, 11-14.)  Defendants MTC, Johnson, and McDonald (the "MTC Defendants") filed cross-claims against Defendant Eagle, and Defendant Eagle has similarly cross-claimed against the MTC Defendants.  Defendant Eagle filed this Motion to Dismiss on November 25, 2008.

## II.  STANDARDS OF REVIEW

### A.    Standard for Motion to Dismiss Under Rule 12(b)(2)

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom, and to resolve all factual disputes in favor of the plaintiff.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); see FED. R. CIV. P. 12(b)(2).  The rule, however, "does not limit the scope of the court's review to the face of the pleadings;" rather the court must consider any affidavits submitted by the parties.  Scott v. Lackey, Civ. A. No. 02-1586, 2005 WL 2035598, at *1-2 (M.D. Pa. Aug. 11, 2005).

Although a defendant has the initial burden of raising the defense of lack of personal

jurisdiction, once the defense is raised, the burden shifts to the plaintiff to demonstrate facts that establish personal jurisdiction.  <u>Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n.</u>, 819 F.2d 434, 437 (3d Cir. 1987); <u>Cumberland Truck Equip. Co. v. Detroit Dies. Corp.</u>, 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005).  Plaintiff may do so through affidavits or competent evidence that show sufficient contacts with the forum state to establish personal jurisdiction.  <u>De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP</u>, Civ. A. No. 08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008).  Such contacts must be established with "reasonable particularity," but need only amount to a *prima facie* case in favor of personal jurisdiction.  <u>Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting <u>Provident</u>, 819 F.2d at 437).  If plaintiff meets this burden, defendant must then establish the presence of other considerations that would render jurisdiction unreasonable.  <u>DeLage</u>, 2008 WL 4822033, at *3 (citing <u>Carteret Sav. Bank v. Shushan</u>, 954 F.2d 141, 150 (3d Cir. 1992))

## B.   Standard for Motion to Dismiss Under Rule 12(b)(5)

The Federal Rules of Civil Procedure also allow a Court to dismiss an action for "insufficiency of service of process."  FED. R. CIV. P. 12(b)(5 ).  In a Rule 12(b)(5) motion, "the party making the service has the burden of demonstrating validity when an objection to the service is made."  <u>Suegart v. U.S. Customs Serv.</u>, 180 F.R.D. 276, 278 (E.D. Pa. 1998).  "In addressing such motions, '[t]he courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant[s].'"  <u>Grand Ent. Group, Ltd. v. Star Media Sales, Inc.</u>, Civ. A. No. 86-5763, 1993 WL 437699, at *2 (E.D. Pa. Oct. 21, 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE PROCEDURE § 1354 at 288 (2d ed. 1990)).  Nevertheless, the United States Court of Appeals for the Third Circuit has

4

held that "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.  In such instances, the district court should at most, quash service, leaving the plaintiff[] free to effect proper service."  Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992).

III.    DISCUSSION

Defendant Eagle's challenge to the Complaint is two-fold.  First, it asserts that Plaintiff has failed to establish personal jurisdiction over Eagle in this Court.  Second, it claims that service of process was insufficient.  The Court addresses each argument individually.

A.    **Personal Jurisdiction**

Under Federal Rule of Civil Procedure 4(e), a federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits.  FED. R. CIV. P. 4(e); see also  Blue Ribbon Commodity Traders, Inc. v. Supermercados Mr. Special, Inc., Civ. A. No. 07-4036, 2008 WL 2468381, at *2 (E.D. Pa. Jun. 18, 2008); Accuweather, Inc. v. Total Weather, Inc., 223 F. Supp. 2d 612, 613 (M.D. Pa. 2002). In this case, the forum state is Pennsylvania, thus necessitating the application of Pennsylvania's long-arm statute.  Under this statute, personal jurisdiction of Pennsylvania courts over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA. CONS. STAT. § 5322; see Mellon Bank, 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of

the fourteenth amendment.").  Therefore, a court's inquiry is solely whether the exercise of

personal jurisdiction over the defendant would be constitutional under the Due Process Clause.

Mellon Bank, 960 F.2d at 1221.

Pursuant to these constitutional considerations, physical presence within the forum is not

required to establish personal jurisdiction over a nonresident defendant.  IMO Indus, Inc. v.

Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Instead, personal jurisdiction may be based on

either a defendant's general contacts or his specific contacts with the forum.  Gen. Elec. Co. v.

Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Plaintiff, in this case, contends that the Court has

both specific and general jurisdiction over Defendant Eagle.  The Court, however, finds neither

argument compelling.

## 1.    General Jurisidiction

General jurisdiction turns upon the defendant's "continuous and systematic contacts" with

the forum.  Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-

416, 104 S. Ct. 1868, 1872 (1984)).  Proof of such contact requires a showing of "extensive and

pervasive activity" in the forum state. See Reliance Steel Prods. Co. v. Watson, Ess, Marshall, &

Engass, 675 F.2d 587, 589 (3d Cir. 1982) (quotations omitted).  The defendant's contacts need

not be related to the cause of action being litigated.  McMullen v. Euro. Adoption Consultants,

Inc., 109 F. Supp. 2d 417, 418 (W.D. Pa. 2000).  If the foreign defendant "maintains continuous

and systematic contacts with a state, the state has general personal jurisdiction over the party, and

the non-resident may be sued in that state on any claim."  Wilmington Fin., Inc. v. Moonis, Civ.

A. No. 08-2365, 2008 WL 4661033, at *3 (E.D. Pa. Oct. 21, 2008) (quotations omitted).

6

As to general jurisdiction, Plaintiff argues, without further elaboration, that Eagle has "continuous and systematic" contacts with Pennsylvania residents through its representatives at the Job Corps Office in Philadelphia.  (Pl.'s Opp. Mot. Dismiss 8.)  This bald statement, however, fails to establish the extensive and pervasive activity necessary for a finding of general jurisdiction.  Defendant Eagle has neither its place of incorporation, its principal place of business, a branch office, nor any employees in Pennsylvania.   The mere fact that some of the Potomac Academy's students were solicited in Pennsylvania by the Philadelphia office of Job Corps, the same federal program contracting with Eagle in Washington, DC, does not satisfy general jurisdiction's high threshold.  See 4 Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE CIV. 3D § 1067.5 (3d ed. 2008) ("As many of the illustrative federal cases . . . indicate, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction.")  Indeed, nothing in any pleading or exhibit before the Court shows any contacts by Eagle with Pennsylvania, let alone any that could be classified as "continuous and systematic." Consequently, the Court declines to find general jurisdiction.

## 2.    Specific Jurisdiction

In the absence of "continuous and systematic" contacts, a plaintiff may rely on "specific jurisdiction" where the cause of action is related to or arises out of the defendant's contacts with the forum.  IMO Indus., 155 F.3d at 259 (citing Helicopteros, 466 U.S. at 414 n.8).  To properly exercise specific jurisdiction under the Due Process Clause, plaintiff must satisfy a three-part test.  Louis A. Grant, Inc. v. Hurricane Equip., Inc., Civ. A. No. 07-438, 2008 WL 892152, at *3

(W.D. Pa. Apr. 2, 2008).  "First, the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum."  IMO Indus, 155 F.3d at 259 (citing  (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985)).  Second, the plaintiff's claim must "arise out of or relate to those activities."  Helicopteros, 466 U.S. at 414. Third, the reviewing court may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"  Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. 310, 320, 66 S. Ct. 154, 160 (1945)).

To satisfy the first and second components of the specific jurisdiction test, the acts identified by plaintiff must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]."  World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 266, 297, 100 S. Ct. 559, 567 (1980).  It has long been recognized that minimum contacts necessary to support specific jurisdiction exist only where the defendant "has purposefully directed its activities toward the residents of the forum state . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  IMO Indus,, 155 F.3d at 259 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958) (other internal quotations omitted)).  "This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are 'random, fortuitous,' or 'attenuated,' or that result from the unilateral activity of another party or a third person."  Louis A. Grant, Inc, 2008 WL 892152, at *3 (quoting Burger King, 471 U.S. at 475).

In the case of an intentional tort claim, the first and second factors are replaced by the "effects" test articulated by the United States Supreme Court in Calder v. Jones, 465 U.S. 783,

8

104 S. Ct. 1482 (1984).  See IMO Indus., 155 F.3d at 265 (adopting Calder "effects" test).

"Under the effects test, a court may exercise personal jurisdiction over a nonresident defendant

who acts outside the forum state to cause an effect upon the plaintiff within the forum state."

Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 148 (3d Cir. 1992).  To establish personal

jurisdiction under the Calder "effects" test, a plaintiff must show that:  (1) the defendant

committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that

the forum can be said to be the focal point of the resulting harm; and (3) the defendant expressly

aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the

tortious activity.  See IMO Indus., 155 F.3d at 265-66.  If all three factors are met, a court will

find personal jurisdiction.  Id.  The Third Circuit has recognized, however, that Calder did not

"carve out a special exception to the traditional specific jurisdiction analysis, so that a plaintiff

could always sue in his or her home state."  Id. at 265.  Rather, Calder simply acknowledged that

"the unique relations among the defendant, the forum, the intentional tort, and the plaintiff may

under certain circumstances render the defendant's contacts with the forum – which otherwise

would not satisfy the requirements of due process – sufficient."  Id. at 265.

  The facts and evidence before the Court do not meet Plaintiff's burden of showing a

*prima facie* case of specific jurisdiction.  Plaintiff argues that the Philadelphia Regional Job

Corps solicited "at-risk" youth from Pennsylvania, knowing that some of these students would

attend the Potomac Academy in Washington DC.  Eagle allegedly knew that the Philadelphia Job

Corps was "marketing" the program, including the services of the Washington, DC school, to

Pennsylvania youth.  (Pl.'s Opp. Mot. Dismiss 4.)  In turn, Eagle received a direct pecuniary

interest, since it obtained incentive payments from more students at its school.  (Id. at 5.)

9

Plaintiff goes on to contend that although she attended the Washington, DC school run by Eagle, she actually "signed-up" in the Philadelphia regional Job Corps office and, ultimately, was denied a job in Pennsylvania due to the invalidity of her diploma.  (Id.)  Accordingly, she claims that her cause of action arose directly from Eagle's contacts with Pennsylvania.

Plaintiff's argument fails to establish, with "reasonable particularity" and supported by either affidavits or competent evidence, the existence of sufficient minimum contacts between Eagle and Pennsylvania.  See De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, Civ. A. No. 08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008).  First, as to her claim of negligence – a non-intentional tort – the requisite contacts are lacking.  Defendant Eagle was involved soley with the Washington, DC Job Corps center.  It acted as a contractor for the federal Job Corps program to operate that particular center.  At no point did it conduct any business with respect to any center in Pennsylvania.  Although Job Corps – an entity completely distinct from Eagle – maintained a center in Philadelphia, as well as in 122 other areas throughout the United States, Plaintiff has presented no connection between that Philadelphia center and Eagle.  Indeed, nothing suggests that Eagle, via any of its actions, directly targeted Pennsylvania residents.  The mere fact that some of the students attending the Potomac Academy originally enlisted at the regional Job Corps Center in Pennsylvania due to marketing by the Job Corps program, fails to establish that Eagle "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, 357 U.S. at 253. Further, any alleged pecuniary benefit that Eagle received from Job Corps' unilateral activities in Pennsylvania, aside from being completely unsupported by Plaintiff, is too attenuated for the Court to find that it should reasonably have "anticipate[d] being haled into court [in this state]."

World-Wide Volkswagon, 444 U.S. at 297.

Moreover, as to Plaintiff's fraud claim – an intentional tort – Plaintiff has failed to meet the Calder effects test.[1]  Although arguably Plaintiff could establish that (1) Defendant Eagle committed an intentional tort, and (2) Plaintiff felt the brunt of the harm in Pennsylvania when she was denied a job at Jefferson Hospital due to her lack of diploma, she presents no arguments or evidence to establish that Defendant Eagle expressly aimed the alleged tortious conduct at Pennsylvania, such that Pennsylvania can said to be the focal point of the tortious activity.  See IMO Indus., 155 F.3d at 266 ("to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.")  Any purported fraud committed by Eagle occurred in Washington, DC and was directed at students attending the school there, without regard to where they may later reside upon receipt of their fraudulent diplomas.  As such, the Calder effects test counsels against a finding of personal jurisdiction.

Even assuming *arguendo* that the Court were to find that Defendant Eagle maintained the requisite minimum contacts with the state of Pennsylvania and that Plaintiff's causes of action arose out of those contacts, Plaintiff's claim fails to meet the third component of the specific jurisdiction analysis.  The United States Supreme Court has listed several factors that courts should take into account when balancing jurisdictional reasonableness, including:  "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in

---

[1] Notably, Plaintiff does not even mention the Calder effects test, let alone conduct an analysis of its elements.

obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 477 (internal quotations omitted).

An analysis of these factors in this case suggests that this Court's assertion of personal jurisdiction over Eagle would not comport with notions of "fair play and substantial justice." First, an undue burden results from any finding of specific jurisdiction based on Plaintiff's claim that Eagle's relationship with the federal Department of Labor establishes its purposeful activity towards the state of Pennsylvania. Accepting such an argument would effectively subject Eagle to personal jurisdiction in all fifty states and Puerto Rico, since the Department of Labor maintains Job Corps centers in those locations as well. Second, and contrary to Plaintiff's argument, Washington, DC, not Pennsylvania, was the situs of all of the actions constituting the alleged fraud and negligence. Third, although Pennsylvania likely has some interest in protecting its residents, Plaintiff attended Job Corps in Washington, DC and was awarded a purportedly fraudulent degree in that jurisdiction, giving that jurisdiction a more substantial interest in assuring the well-being of those who attend schools there. Finally, considerations of judicial efficiency counsel against a finding of personal jurisdiction over Defendant Eagle. While Plaintiff claims that witnesses from Jefferson Hospital (where she was denied employment) and Philadelphia Regional Job Corps Center (where she enlisted) are crucial to the matter, she fails to recognize that many of the relevant witnesses and documents will come directly from the Potomac Academy and Job Corps Center in Washington, DC. In short, as Eagle neither operated in nor directed any activities towards Pennsylvania, requiring it to defend itself in this forum

would be patently unfair.

### 3.    Conclusion as to Personal Jurisdiction

In short, Plaintiff has failed to show either sufficient minimum contacts between Defendant Eagle and the forum state or that the Court's exercise of personal jurisdiction over Eagle would comport with notions of fair play and substantial justice.  As a finding of personal jurisdiction would be unconstitutional, Pennsylvania's long-arm statute does not extend to Eagle. Accordingly, the Court finds no jurisdiction over Defendant Eagle in this case.

Such a conclusion necessarily begs the question of the appropriate remedy.  Although Defendant Eagle's original Motion asks the Court to dismiss the case under Federal Rule of Civil Procedure 12(b)(2), its Reply Brief suggests that transfer of the case to federal court in Washington DC is more appropriate.  This Court agrees.  "A district court lacking personal jurisdiction can transfer a case to a district in which the case could have been brought originally." Gehling v. St. George's Sch. of Medicine, Ltd., 773 F.2d 539, 544 (3d Cir. 1985); see also Faust v. Coakley, Civ. A. No. 06-1536, 2007 WL 1876528, at *8 (W.D. Pa. Jun. 28, 2007) ("When a court lacks personal jurisdiction over a non-resident defendant, it may dismiss the action or transfer the case to the proper forum in which it could have originally been brought.").  Under 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . ."  28 U.S.C. § 1631; see also Island Steel Sys., Inc. v. Waters, 296 F.3d 200, 218 n.9 (3d Cir. 2002) (recognizing that a district court has authority, if it finds that it lacks *in personam* jurisdiction, to transfer the plaintiff's action); D'Jamoos v. Pilatus Aircraft Ltd., Civ.

13

A. No. 07-1153, 2008 WL 1902193, at *10 (E.D. Pa. Apr. 30, 2008) (recognizing that section

1631 allows transfer due to lack of personal jurisdiction where transferee court has personal

jurisdiction over all defendants); Stinnett v. Atlantic City Showboat, Inc., Civ. A. No. 07-4743,

2008 WL 1924125, at *6 (E.D. Pa. Apr. 29, 2008) (transferring case under § 1631 where

personal jurisdiction over defendant was lacking); Chicosky v. Presbyterian Med. Ctr., 979 F.

Supp. 316, 321 n.5 (D.N.J.1997) ("the weight of authority among courts in [the Third] Circuit is

that § 1631 [allows] transfers where personal jurisdiction is lacking.").

        In this case, transfer is warranted to obviate the unnecessary step of requiring plaintiff to

refile her claim in another court.  This Court finds, and Defendant Eagle concedes, that

jurisdiction and venue are proper in the United States District Court for the District of Columbia.

All Defendants conducted business in the District of Columbia, and all of the alleged negligent

and tortious acts were committed there.  In addition, although not all, most of the relevant

witnesses and documentary evidence are located in the District of Columbia.  Given the

alternative of dismissing the claims against Defendant Eagle, the Court finds that the interests of

justice and judicial economy compel the transfer of the entire action to the United States District

Court of the District of Columbia.

        **B.**     **Service of Process**

        Defendant Eagle's second argument contends that Plaintiff failed to effect the proper

manner of service on Eagle as required by Federal Rule of Civil Procedure 4(e).  In her initial

Response, Plaintiff did not dispute this allegation, but simply requested that the Court permit her

to cure the improper service before the expiration of the time limit set forth in Federal Rule of

Civil Procedure 4(m).  Thereafter, on December 18, 2008, Plaintiff filed with the Court a

Certificate of Cured Service purporting to have properly served Defendant Eagle's service-agent via hand-delivery.

Rule 4(m) states that "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m).  In this case, Plaintiff filed her Complaint on September 8, 2008.  As such, under the Rule, she had until January 8, 2009, to remedy any improper service before the Court could act to dismiss the Complaint.  See Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992) ("dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.  In such instances, the district court should at most, quash service, leaving the plaintiff[] free to effect proper service.")  As the current service was effectuated on December 18, 2008, no basis for dismissal exists.

IV.   **CONCLUSION**

For all of the reasons set forth above, the Court finds that it does not have personal jurisdiction over Defendant Eagle.  In lieu of dismissal, however, the Court transfers the case to the appropriate forum of the United States District Court for the District of Columbia.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QULENA HALIM, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EAGLE GROUP INTERNATIONAL, INC. | : | 08-4312 |
| MANAGEMENT AND TRAINING | : | |
| CORP, CELESTE MCDONALD, and | : | |
| DARRYL JOHNSON | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this *23rd* day of *December*, 2008, upon consideration of Defendant Eagle Group International, LLC's ("Eagle") Motion to Dismiss for Lack of Jurisdiction and Improper Service of Process (Doc. No. 18), Plaintiff Qulena Halim's Response thereto (Doc. No. 20) and Defendant Eagle's Response thereto (Doc. No. 21), it is hereby **ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. In light of this Court's lack of personal jurisdiction over Defendant Eagle, the Court **TRANSFERS** this matter, pursuant to 28 U.S.C. § 1631, to the United States District Court for the District of Columbia;

2. Defendant Eagle's Motion to Dismiss for improper service of process, under Federal Rule of Civil Procedure 12(b)(5), is **DENIED AS MOOT**.

It is further **ORDERED** that this Court's Order dated December 19, 2008, scheduling this matter for a settlement conference is **VACATED.**

It is so **ORDERED**.

BY THE COURT:


*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.

16